THE ST. PAUL TRAVELERS COMPANIES, INC. *v.*
SYLVIA N. KUEHL ET AL.
(SC 18387)

Katz, Palmer, McLachlan, Eveleigh and R. Robinson, Js.

Argued October 19, 2010—officially released January 5, 2011*

*Proloy K. Das*, with whom were *John R. Downey* and, on the brief, *Anne C. Dranginis*, for the appellants (intervening defendants).

*Jason M. Dodge*, with whom was *Courtney S. Stabnick*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. This appeal requires us to consider the narrow question of whether a respondent in a workers' compensation action, prior to the completion of proceedings before the workers' compensation com-

---

* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

missioner (commissioner), may bring a declaratory judgment action in the Superior Court, challenging the constitutionality of the statute on which a claimant relies to confer jurisdiction on the commissioner. The intervening defendants, Rosalind J. Koskoff and Koskoff, Koskoff and Bieder, P.C., appeal[1] from the trial court's summary judgment rendered in favor of the plaintiff, The St. Paul Travelers Companies, Inc., formerly known as Travelers Insurance Company, the respondent in the underlying action before the commissioner. On appeal, the defendants claim that the trial court lacked jurisdiction to declare General Statutes § 31-294c (d) unconstitutional.[2] In support of their claim that the trial court lacked jurisdiction, the defendants contend that the plaintiff lacks standing and that the claim is not ripe for review because the plaintiff failed to exhaust its administrative remedies. The defendants raise no claims challenging the trial court's decision on the merits. We affirm the judgment of the trial court.

This is not the first time that we consider an appeal arising from a workers' compensation claim for survivor's benefits brought by the named defendant, Sylvia N. Kuehl, the claimant in the underlying action before

[1] The intervening defendants appealed from the judgment of the trial court directly to this court pursuant to General Statutes § 51-199 (b) (2), which provides for a direct appeal to this court "in any matter where the Superior Court declares invalid a state statute or a provision of the state Constitution . . . ."

Because the named defendant, Sylvia N. Kuehl, is not a party to this appeal, we refer to the intervening defendants as the defendants.

[2] General Statutes § 31-294c (d) provides: "Notwithstanding the provisions of subsection (a) of this section, a dependent or dependents of a deceased employee seeking compensation under section 31-306 who was barred by a final judgment in a court of law from filing a claim arising out of the death of the deceased employee, whose date of injury was between June 1, 1991, and June 30, 1991, and whose date of death was between November 1, 1992, and November 30, 1992, because of the failure of the dependent to timely file a separate death benefits claim, shall be allowed to file a written notice of claim for compensation not later than one year after July 8, 2005, and the commissioner shall have jurisdiction to determine such dependent's claim."

the commissioner. In *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 527–29, 829 A.2d 818 (2003), we set forth the following underlying facts and procedure pertinent to the present appeal. "[Kuehl] is the widow and sole presumptive dependent of Guenther Kuehl (decedent). The decedent was the president and sole shareholder of [Z-Loda Systems Engineering, Inc. (Z-Loda Systems)], and [Kuehl] was its secretary and treasurer.

"On June 26, 1991, the decedent suffered personal injuries in an automobile accident that, according to the decedent, had occurred in the course of his employment. As a result of the decedent's injuries, [Kuehl] assumed the day-to-day management of Z-Loda Systems in October, 1991. On December 16, 1991, the decedent filed a notice of claim for workers' compensation benefits. On January 21, 1992, Z-Loda Systems and the [plaintiff], Z-Loda Systems' workers' compensation insurance carrier, filed a notice contesting the decedent's claim in accordance with § 31-294c (b). . . . To date, the decedent's claim has not been resolved and no benefits have been paid in connection therewith.

"On November 1, 1992, the decedent and [Kuehl] initiated a third party action against the driver and owner of the other vehicle involved in the June 26, 1991 accident. On November 14, 1992, the decedent died as a result of an aortic aneurysm. Thereafter, [Kuehl], in her capacity as executrix of the decedent's estate, was substituted for the decedent in the third party action. Subsequently, [Kuehl] amended the complaint (amended complaint) in the third party action to allege that the decedent's aortic aneurysm was a consequence of the injuries that the decedent had sustained in the automobile accident." Id. The defendants in the present action represented Kuehl in that third party action. *Kuehl* v. *Koskoff*, Superior Court, judicial district of

Stamford-Norwalk at Stamford, Docket No. CV-99-0171076-S (March 19, 2007) (43 Conn. L. Rptr. 98).

"[Kuehl] sent a copy of the amended complaint to Z-Loda Systems in May, 1993. After receiving the amended complaint, Z-Loda Systems moved to intervene in the third party action. In its motion to intervene, Z-Loda Systems asserted, inter alia, that, '[b]y virtue of the Workers' Compensation Act [act] . . . [Z-Loda Systems] may become obligated to pay large sums to the estate of [the decedent] and/or to [Kuehl] . . . .'

"On July 22, 1998, [Kuehl] requested a hearing on her claim for survivor's benefits notwithstanding her failure to file a timely notice of claim for compensation in accordance with § 31-294c (a).[3] The commissioner conducted a hearing on [Kuehl's] claim on August 31, 1998. In connection with that hearing, the parties submitted a joint stipulation of facts and exhibits. The parties also submitted a joint issue for consideration, namely, '[w]hether, based upon the facts, [Kuehl] . . . should be precluded from pursuing a [survivor's] benefits claim under . . . [General Statutes] § 31-306 due to the fact that she did not file a formal notice of claim within the statute of limitations period established under . . . § 31-294c (a), which would have been one year from the date of [the decedent's] death—November 14, 1993.'

"[Kuehl] proffered three reasons why her failure to file a notice of claim for compensation in accordance

[3] General Statutes § 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within the two-year period or within one year from the date of death, whichever is later. . . ."

with § 31-294c (a) was not fatal to her claim for survivor's benefits. First, [she] maintained that the amended complaint, a copy of which [she] sent to Z-Loda Systems in May, 1993, constituted sufficient notice of [her] claim for survivor's benefits under § 31-294c (a). In support of this claim, [Kuehl] underscored the fact that Z-Loda Systems expressly noted in its motion to intervene that it 'may become obligated to pay large sums to the estate of [the decedent] and/or to [Kuehl] . . . .' On the basis of this allegation by Z-Loda Systems, [Kuehl] maintained that Z-Loda Systems had actual notice that she was seeking survivor's benefits, thereby rendering technical compliance with § 31-294c (a) unnecessary.

"Second, [Kuehl] asserted that the notice requirements contained in § 31-294c (a) were satisfied under the particular circumstances of this case because knowledge of her intent to seek survivor's benefits should be imputed to Z-Loda Systems in light of the fact that she was managing Z-Loda Systems at the time of the decedent's death. Finally, [Kuehl] argued that her failure to file a notice of claim for compensation did not preclude her from obtaining survivor's benefits in light of § 31-294c (c), which enumerates certain circumstances under which the failure to file a notice of claim for compensation or under which the filing of a defective or inaccurate notice of claim for compensation will not bar a claimant from obtaining benefits under § 31-306 (a). The commissioner disagreed with [Kuehl], however, and concluded that [her] failure to file a notice of claim for compensation in accordance with § 31-294c (a) precluded her claim for survivor's benefits.

"[Kuehl] appealed from the decision of the commissioner to the [workers' compensation review board (board)], which affirmed the commissioner's decision." *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 265 Conn. 529–32. In affirming the decision of the board on appeal, we recognized that "[i]t is well established . . .

that a notice of claim or the satisfaction of one of the . . . exceptions [contained in § 31-294c (c)] is *a prerequisite that conditions whether the commission[er] has subject matter jurisdiction under the [act].*" (Emphasis in original; internal quotation marks omitted.) Id., 534. We concluded, therefore, that Kuehl's failure to file the notice of claim within the time limit specified in § 31-294c (a) deprived the commissioner of subject matter jurisdiction. Id., 534–35.

Subsequently, Kuehl brought an action against the defendants for legal malpractice, claiming that they had failed to advise her that in order for the commissioner to have jurisdiction pursuant to the act, she was required to file a notice of claim for survivor's benefits within one year from the decedent's death. The defendants have alleged, both within the legal malpractice action, and in the present action, that they had arrived at an oral settlement agreement with Kuehl, whereby the defendants would seek to have § 31-294c amended to create an exception to the statute of limitations in § 31-294c (a), in order to allow Kuehl "and others" to refile her claim for survivor's benefits. In accordance with that agreement, the defendants proposed an amendment to the statute. The amendment was adopted by the legislature; Public Acts 2005, No. 05-230, § 2; and is now codified at § 31-294c (d), which provides: "Notwithstanding the provisions of subsection (a) of this section, a dependent or dependents of a deceased employee seeking compensation under section 31-306 who was barred by a final judgment in a court of law from filing a claim arising out of the death of the deceased employee, whose date of injury was between June 1, 1991, and June 30, 1991, and whose date of death was between November 1, 1992, and November 30, 1992, because of the failure of the dependent to timely file a separate death benefits claim, shall be allowed to file a written notice of claim for compensa-

tion not later than one year after July 8, 2005, and the commissioner shall have jurisdiction to determine such dependent's claim."

On August 17, 2005, Kuehl filed a notice of claim with the commissioner, seeking survivor's benefits. The plaintiff contested the claim, arguing that this court's decision in *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 265 Conn. 525, barred Kuehl's new claim because § 31-294c (d), which would have allowed Kuehl to circumvent the effect of that decision, is an unconstitutional emolument. Because the commissioner agreed with the plaintiff, he did not allow the claim to proceed and advised the plaintiff to bring the present action challenging the constitutionality of the statute. Kuehl did not seek review with the board of the commissioner's refusal to allow the case to proceed.

The plaintiff subsequently brought the present action, seeking a declaratory judgment that § 31-294c (d) is unconstitutional. The trial court denied the defendants' motion to dismiss the action for lack of subject matter jurisdiction, rejecting the defendants' claims that the plaintiff lacked standing on the basis that any injury suffered by the plaintiff was hypothetical and that the matter was not ripe for review until the commissioner had heard and decided Kuehl's claim on the merits. The court subsequently granted the plaintiff's motion for summary judgment, concluding that § 31-294c (d) constitutes a public emolument designed to benefit Kuehl individually, and accordingly violates article first, § 1, of the constitution of Connecticut, which provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." The court based its conclusion both on the narrow language of § 31-294c (d) and on the evidence presented by the plaintiff demonstrating that the defendants had secured the amendment in exchange for Kuehl's

agreement to withdraw her legal malpractice action upon passage of the act.[4] This appeal followed.

The defendants do not challenge the trial court's conclusion that § 31-294c (d) is an unconstitutional public emolument designed to benefit Kuehl individually. Instead, they raise jurisdictional challenges, based on standing and failure to exhaust administrative remedies. We address each jurisdictional challenge in turn. With respect to standing, the defendants argue that the plaintiff has not demonstrated that it has a specific, personal and legal interest in the constitutionality of § 31-294c (d), or that the plaintiff's alleged interest was harmed by the statute.[5] We conclude that the plaintiff's allegations are sufficient to demonstrate that it has standing to bring the action.

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall,* 298 Conn. 145, 164, 2 A.3d 873 (2010).

---

[4] It appears from the record that there may have been some disagreement between Kuehl and the defendants as to the precise terms of the settlement agreement. That disagreement, however, is irrelevant to our consideration of the issues presented in this appeal.

[5] The plaintiff claims that, because the defendants did not argue to the trial court that the plaintiff lacked standing to seek a declaratory judgment against another party regarding the constitutionality of a statute, the claim is not preserved and we may not address it. Because the argument implicates subject matter jurisdiction, however, it may be raised at any time during the pendency of the proceedings. See, e.g., *Ajadi* v. *Commissioner of Correction,* 280 Conn. 514, 532–33, 911 A.2d 712 (2006). See footnote 6 of this opinion for our discussion of the defendants' claim.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 207, 994 A.2d 106 (2010).

When Kuehl filed her second notice of claim on August 17, 2005, more than twelve years had elapsed since the decedent's death on November 14, 1992. The plaintiff's interest in the subject matter of the present action, namely, the constitutionality of § 31-294c (d), is the same interest that was at issue in *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 265 Conn. 525. Both then and now, the plaintiff's legal interest was in being protected from having to defend against a stale claim, which is one of the primary purposes served by our statute of limitations. As we have explained, "[t]he enactment of [s]tatutes limiting the time within which an action may be brought are the result of a legitimate legislative determination which balances the rights and duties of competing groups. . . . A statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan

their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Citation omitted; internal quotation marks omitted.) *Ecker* v. *West Hartford*, 205 Conn. 219, 239–40, 530 A.2d 1056 (1987); see also *Gurliacci* v. *Mayer*, 218 Conn. 531, 548, 590 A.2d 914 (1991).

In *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 265 Conn. 534 n.14, we emphasized that the statute of limitations set forth in § 31-294c (a), was subject matter jurisdictional. Accordingly, we concluded, Kuehl's failure to file a notice of claim within the time limit, and the failure of the notice of claim to fall under any of the exceptions then enumerated in § 31-294c, deprived the commissioner of subject matter jurisdiction. Id., 534. The *only* change effected by § 31-294c (d) is that it creates an additional exception to the limitations period set forth in § 31-294c (a). In 2005, when Kuehl filed her second survivor's benefits claim with the commissioner, the plaintiff's notice of intention to contest the claim relied on our decision in *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 525, as support for its contention that any additional claims for benefits by Kuehl are barred. The plaintiff claimed that § 31-294c (d)—which would have provided the only basis, subsequent to that decision, on which the commissioner would have had subject matter jurisdiction over Kuehl's claim—is unconstitutional. The plaintiff's legal interest in the declaratory judgment action—being protected from defending against a stale claim—is thus clear from this record.[6] Moreover, that the plaintiff's interest in

---

[6] The defendants contend that the fact that § 31-294c (d) may grant an exclusive benefit to Kuehl does not confer standing on the plaintiff to challenge its constitutionality. They characterize the plaintiff's action as a freestanding action in which a private party brings an action against another private party to test the constitutionality of a statute. They appear to suggest

being protected from stale claims is " 'specially and injuriously affected' " by § 31-294c (d); *Gold* v. *Rowland*, supra, 296 Conn. 207; is demonstrated by the fact that upon its passage, Kuehl filed the underlying claim for survivor's benefits with the commissioner. The plaintiff adequately has demonstrated that it has standing to bring the declaratory judgment action.

The defendants also claim that the action is not ripe for review because the plaintiff failed to exhaust its administrative remedies. As a result, they claim, without a resolution on the merits by the commissioner, the plaintiff could not demonstrate that it had been damaged. The resolution of this question requires us to examine the interplay among four fundamental principles within our jurisprudence, namely, the exhaustion doctrine, the duty to avoid addressing constitutional issues unnecessarily, the purposes underlying statutes of limitation, and the "jurisdiction first" rule, which mandates that a jurisdictional issue must be resolved before the merits can be addressed. Although the first two principles ordinarily would weigh in favor of dismissal of the plaintiff's action, the latter two principles persuade us that the present case falls under the futility exception to the exhaustion doctrine, and, accordingly,

that the plaintiff's legal interest in bringing the action is simply that the statute solely benefits Kuehl. That characterization of the present action confuses the substance of the plaintiff's constitutional challenge to § 31-294c (d)—that it constitutes a public emolument intended to benefit Kuehl—with the legal interest that the plaintiff has in challenging the act—namely, being protected from defending against a stale claim. The plaintiff did not arbitrarily select Kuehl as a defendant simply because it believed that § 31-294c (d) was a public emolument designed to benefit her personally. The plaintiff's action is against Kuehl because she relied on the statute in filing her claim for survivor's benefits with the commissioner, and because the plaintiff was the workers' compensation insurer for Z-Loda Systems. As we have explained, the plaintiff has a specific, personal and legal interest at issue in litigating the constitutionality of the statute. If the statute is not constitutional, then the commissioner has no jurisdiction to consider Kuehl's claim and the plaintiff is not obligated to defend the action.

we conclude that the plaintiff was not required to proceed to the merits before the commissioner prior to bringing the present action.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (Internal quotation marks omitted.) *BRT General Corp.* v. *Water Pollution Control Authority,* 265 Conn. 114, 123, 826 A.2d 1109 (2003). "For example, when a statute provides for an adequate remedy, we have long adhered to the rule that, where a statutory right of appeal from an administrative decision exists, an aggrieved party may not bypass the statutory procedure and instead bring an independent action to test the very issue which the appeal was designed to test." (Internal quotation marks omitted.) *School Administrators of Waterbury* v. *Waterbury Financial Planning & Assistance Board,* 276 Conn. 355, 368, 885 A.2d 1219 (2005).

"A primary purpose of the doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it

ensures the integrity of the agency's role in administering its statutory responsibilities. . . .

"The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . [W]e have recognized such exceptions only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate." (Citations omitted; internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 564–65, 821 A.2d 725 (2003).

It is well established that a plaintiff may not circumvent the requirement to exhaust available administrative remedies merely by asserting a constitutional claim. See, e.g., id., 570; *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 354, 542 A.2d 672 (1988); *LaCroix* v. *Board of Education*, 199 Conn. 70, 79, 505 A.2d 1233 (1986); *Sullivan* v. *State*, 189 Conn. 550, 554, 457 A.2d 304 (1983). "As this court has stated on several occasions, [s]imply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process. . . . [D]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore. . . . [W]e continue to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, supra, 263 Conn. 571.

Limiting the judicial bypass of colorable constitutional claims to those instances of demonstrable futility is consistent with our duty to "eschew unnecessarily deciding constitutional questions . . . ." *Hogan* v.

*Dept. of Children & Families,* 290 Conn. 545, 560, 964 A.2d 1213 (2009). Pursuant to that duty, we must limit circumvention of administrative proceedings to instances in which those proceedings would be futile because no adequate administrative remedy exists. Moreover, the mere assertion in an administrative proceeding of a constitutional challenge to a statute or agency procedure does not automatically satisfy the futility exception to the exhaustion doctrine. To determine whether a party properly may seek court intervention prior to the completion of administrative proceedings, we examine "whether the court has been asked to address issues entrusted to the [commissioner] and whether the [commissioner] could issue appropriate relief." *Stepney, LLC* v. *Fairfield,* supra, 263 Conn. 566.

In the present case, the issue before the trial court was the constitutionality of § 31-294c (d). Accordingly, the court was not asked to decide an issue that has been entrusted to the commissioner. It is well established that "adjudication of the constitutionality of legislative enactments is beyond the jurisdiction of administrative agencies." *Rayhall* v. *Akim Co.,* 263 Conn. 328, 337, 819 A.2d 803 (2003). The commissioner, therefore, is expressly *barred* from addressing the question. Indeed, the commissioner's conclusion that he lacked jurisdiction to consider the plaintiff's constitutional challenge to § 31-294c (d) is precisely what prompted him to advise the plaintiff to seek a declaratory judgment in the Superior Court.

We turn next to the question of whether the commissioner could issue appropriate relief. The resolution of the four competing principles implicated by the defendants' jurisdictional challenge depends on this question. The answer lies in the nature of the statute of limitations set forth in § 31-294c (a). Because the statute of limitations serves the purpose of securing finality and pro-

tecting against the enforcement of stale claims, the limitations period in § 31-294c (a) forms the basis of the plaintiff's claim that it is entitled to protection from defending against Kuehl's claim for benefits. In other words, it is only the purpose underlying the statute of limitations that gives the plaintiff a colorable claim that the right to be free from defending a claim is a form of *relief*, to which it is entitled. Of course, the only way to determine whether the plaintiff could obtain the relief it sought was to resolve the constitutional challenge, which the commissioner could not do.

Generally, statutes of limitation are considered to be procedural and do not implicate subject matter jurisdiction. *Moore* v. *McNamara*, 201 Conn. 16, 22, 513 A.2d 660 (1986). Ordinarily, a defendant must plead the failure to meet the applicable statute of limitations as an affirmative defense, and the defendant bears the burden of proving the elements of the defense by a preponderance of the evidence. *State* v. *Figueroa*, 235 Conn. 145, 177–78, 665 A.2d 63 (1995). As we have explained, however, § 31-294c (a) implicates the commissioner's subject matter jurisdiction. Therefore, filing notice within the statutory limitation period is a prerequisite to the commissioner having jurisdiction to consider Kuehl's claim for benefits. Unlike a statute of limitations that is merely procedural, a subject matter jurisdictional statute of limitations may not be waived, and a court may address it sua sponte. *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 696–97, 6 A.3d 52 (2010). While a nonjurisdictional statute of limitations merely provides relief from liability, a jurisdictional statute of limitations provides freedom from suit. Thus, it is this hybrid nature of § 31-294c (a), namely, that it simultaneously protects the plaintiff from defending against the claim for benefits and functions as a prerequisite before the commissioner acquires jurisdiction over the claim, that renders further proceedings before the commissioner futile.

Because the constitutional question is inextricably intertwined with subject matter jurisdiction, the resolution of the constitutional question was a necessary prerequisite before the commissioner could proceed further.

This conclusion is consistent with the "jurisdiction first" rule. "Once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 813, 786 A.2d 1091 (2002). This fundamental principle, that jurisdictional questions must be resolved before proceeding to the merits of a claim, applies equally to the commissioner. Under that principle, the commissioner was obligated, before proceeding to the merits of the claim, to resolve the jurisdictional question.

The present case, therefore, is one of the rare instances in which an exception to the exhaustion requirement is justified. We do not decide today that a litigant may circumvent the exhaustion requirement merely by challenging the constitutionality of a statute that implicates subject matter jurisdiction. Nor do we decide that a constitutional challenge to an exception to *any* statute of limitations suffices to demonstrate futility. Our narrow holding is that a constitutional challenge to an applicable statute of limitations that serves as a prerequisite to an agency's jurisdiction falls within the futility exception to the exhaustion doctrine.[7]

---

[7] To the extent that the defendants may be understood also to advance an independent argument that the plaintiff's action is not ripe for review, that argument fails, in light of our conclusion that the injury at issue is having to defend against a stale claim. "[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never

Accordingly, the trial court properly concluded that it had subject matter jurisdiction over the action.

The defendants contend that the plaintiff could have obtained appropriate relief by litigating the claim for benefits before the commissioner.[8] It is possible, claim the defendants, that the commissioner may not award benefits to Kuehl. In that eventuality, the defendants contend, the plaintiff will have suffered no harm from Kuehl's reliance on § 31-294c (d) in bringing the claim for survivor's benefits, and it would be unnecessary to reach the question of the constitutionality of the provision. This path, the defendants assert, is the correct one because it is consistent with the exhaustion doctrine and the principle that courts have an affirmative duty to avoid deciding constitutional issues unnecessarily. Even if Kuehl prevailed in the proceedings before the commissioner, and the board subsequently affirmed that award, the defendants argue, the plaintiff subsequently could challenge the constitutionality of § 31-294c (d) in an appeal to the Appellate Court. The defendants' argument presumes that the only possible legal interest that the plaintiff could assert is freedom from liability. As we have explained, however, the plaintiff has a recognized legal interest in being protected from defending against stale claims. Allowing the action

transpire." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86–87, 952 A.2d 1 (2008). The defendants contend that until Kuehl's claim proceeds to the merits before the commissioner, the plaintiff's injury is hypothetical only. That argument presumes that the injury at issue is liability. The plaintiff, however, has demonstrated that the harm at issue is not being subjected to potential liability, but being obligated to defend the claim. Therefore, the claimed injury is not hypothetical and the plaintiff's failure to seek a resolution on the merits before the commissioner does not render the present action unripe for review.

[8] We observe that, because the commissioner had not allowed the claim to proceed to a hearing, and because Kuehl had not sought review of the commissioner's refusal to proceed, it is unclear precisely what procedural remedy, if any, would have been available to the plaintiff before the commissioner.

to proceed to the merits before the commissioner would defeat that interest.

The defendants cite as support our decisions in *Giaimo* v. *New Haven*, 257 Conn. 481, 489–90 and n.8, 778 A.2d 33 (2001), *Rayhall* v. *Akim Co.*, supra, 263 Conn. 337–38, and *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 659–60 and n.5, 916 A.2d 803 (2007). Those cases, however, simply stand for the proposition that this court has jurisdiction to review a constitutional challenge on appeal from the decision of an administrative agency, despite the agency's lack of jurisdiction to rule on the constitutional claim. None of those cases addressed the question presented in this appeal: whether the trial court has jurisdiction to hear an independent action brought in the Superior Court challenging the constitutionality of a statute at issue in an underlying action before an administrative agency, where the claimant relies on the challenged statute to confer jurisdiction on the agency.

While the defendants rely on the principle that courts have an affirmative duty to avoid deciding unnecessary constitutional issues; *Sullivan* v. *McDonald*, 281 Conn. 122, 127, 913 A.2d 403 (2007); the key term in that statement of the principle is the word "unnecessary." The *sole* issue presented in the declaratory judgment action was the constitutional question, and we have concluded that the trial court had jurisdiction to resolve the question. It was, therefore, necessary for the trial court to resolve the constitutional question. As we already have observed in this opinion, the defendants have not challenged the court's conclusion that § 31-294c (d) is an unconstitutional public emolument in violation of article first, § 1, of the constitution of Connecticut. Therefore, that judgment stands.

The judgment is affirmed.

In this opinion the other justices concurred.